UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No. 11-20329-CV-JLK

CAREERFAIRS.COM, a Florida Limited
Liability Company,

  Plaintiff,

v.

UNITED BUSINESS MEDIA LLC, a
Delaware Limited Liability Company,
ASTOUND LLC, a Pennsylvania
Limited Liability Company, and
KEVIN O'BRIEN, individually,

  Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

**THIS MATTER** comes before the Court upon Defendants' Motion to Dismiss Amended Complaint (DE #21), filed June 6, 2011. Plaintiff's Amended Complaint (DE #17) alleges various contract, tort, and statutory causes of action that relate to Plaintiff's underlying allegation that Defendants utilized Plaintiff's idea for an online career fair interview format despite the execution of a confidentiality and non-compete agreement. Upon careful consideration of the Amended Complaint, Motion to Dismiss, the response, and the reply, the Court finds that it must deny Defendants' Motion to Dismiss with respect to Counts I, II, III, IV, and VII, and grant Defendants' Motion to Dismiss with respect to Counts V and VI.

## I. Factual and Procedural Background

The Amended Complaint (DE #17) sets forth the following factual allegations. Plaintiff CareerFairs.com is a Florida limited liability company, with its principal place of business in Palm Beach County, Fla. In September of 2008, Justin Kaplan, president of CareerFairs.com, met with Defendant Kevin O'Brien, seeking investment capital to launch a virtual college career fair featuring an interactive online interview format. O'Brien is the sole managing member of Defendant Astound, LLC, a Pennsylvania limited liability company that does substantial and not isolated business in Florida. Prior to the meeting, CareerFairs.com, O'Brien, and Astound Search[1] executed a confidentiality and non-compete agreement. At some time after the meeting and after review of Kaplan's business plan and model, O'Brien notified Kaplan that he was not interested in investing in CareerFairs.com's virtual career fair business idea.

Subsequently, Astound, LLC launched its own virtual college career fair website, Unicruit.com. In 2010, Defendant United Business Media, LLC ("UBM"), a Delaware limited liability company that conducts substantial and not isolated business in Florida, entered into an asset purchase agreement ("APA") with Astound, LCC. Under the APA, UBM purchased substantially all of Astound, LLC's assets for $3.1 million and assumed certain contractual obligations of Astound. UMB then hired O'Brien to oversee sales and business development of Astound, including the Unicruit.com website.

In November of 2010, Unicruit.com hosted a fully interactive career fair with students attending 16 universities and colleges in the Big East. CareerFairs.com alleges

---

[1] The confidentiality agreement listed "Astound Search," as opposed to "Astound, LLC," as a party. A copy of the confidentiality agreement is attached as Exhibit A to Plaintiff's Amended Complaint (DE #17).

that this virtual career fair was identical to the business idea presented to O'Brien at the 2008 investor meeting. After ignored demands on UBM to cease and desist from using CareerFairs.com's business idea, CareerFairs.com filed the above-styled case.

Plaintiff's Amended Complaint (DE #17) alleges the following causes of action against the three Defendants, UBM, Astound, and O'Brien: Breach of Confidentiality Agreement (Count I); Misappropriation of Trade Secrets in Violation of Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.003 (Count IV);[2] Conversion (Count V); False Advertising under § 43(a) of the Lanham Act (Count VI);[3] and  Violation of Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 et. seq.) (Count VII). In addition, the Amended Complaint alleges Misappropriation of Business Idea against Defendants O'Brien and Astound (Count II),  and Vicarious/Contributory Misappropriation of Business Idea against Defendant UBM (Count III). Defendants filed a Motion to Dismiss Amended Complaint (DE #21), in which they seek to dismiss the following under Federal Rule of Civil Procedure 12(b)(6): i.) all counts against Defendant UBM (Counts I, III–VII); ii.) all counts against Defendant Astound (Counts I, II, IV–VII); and Counts II, V, VI, and VII against Defendant O'Brien.

## II. Discussion

When evaluating a Rule 12(b)(6) motion to dismiss, as long as the complaint properly alleges facts to bring its claims into the realm of plausibility, the Court must view the allegations in the Amended Complaint in the light most favorable to Plaintiff.

---

[2] The Amended Complaint incorrectly refers to Fla. Stat. § 688.03. Accordingly, the Court will refer to the Count IV as Fla. Stat. § 688.003.

[3] The Court notes that the Plaintiff has acknowledged that the Amended Complaint inadvertently refers to Count VI as "false designation of origin violation of 11 U.S.C. § 1125(a)(1)(B)." Accordingly, the Court will refer to the Count VI as false advertising under § 43(a)(1)(B) of the Lanham Act, codified as 18 U.S.C. § 1125(a)(1)(B).

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) ("to survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). In the Motion to Dismiss, Defendants argue that the Amended Complaint fails to plead sufficient facts for each of the seven Counts. Defendants also contest Plaintiff's standing to bring a claim for false advertising under the Lanham Act (Count VI). With respect to Counts I, II, III, IV, and VII, the Court is not persuaded by Defendants arguments and denies the Motion as it pertains to those counts. The Court is, however, persuaded by Defendants' arguments with regard to Counts V and VI. The Court will address each in turn.

### A. Counts I–IV

With respect to Counts I–IV, Defendants seek dismissal of the claims under Rule 12(b)(6) for failure to state a claim, alleging that the Amended Complaint does not plead sufficient facts to bring the claims into the realm of plausibility. Counts I–IV[4] relate to the Defendants' direct and derivative liabilities under the confidentiality agreement, ranging from a direct breach of the confidentiality agreement (Count I), to claims of misappropriation (Counts II–IV), which require that the Defendants have knowledge of the confidential nature of a novel business idea and trade secret.[5] The Court finds that the Amended Complaint pleads sufficient facts in support of its claims under Counts I–IV.

---

[4] Counts I–IV are as follows: Breach of Confidentiality Agreement (Count I); Misappropriation of Business Idea (Count II); Vicarious Misappropriation of Business Idea (Count III); and Misappropriation of Trade Secrets in Violation of Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.003 (Count IV).

[5] The elements of misappropriation of a business idea are: i.) novelty; ii.) "disclosure of the idea must be made in confidence," and iii.) defendant makes use of the idea. *Official Airlines Schedule Info. Serv., Inc. v. E. Air Lines, Inc.*, 333 F.2d 672, 673–74 (5th Cir. 1964). To state a cause of action under Florida's Uniform Trade Secrets Act, a plaintiff must allege that i.) "plaintiff possessed secret information and took reasonable steps to

With respect to these Counts, the Motion highlights a number of unresolved factual issues relevant to various elements of the claims. These factual issues range from the parties' conflicting interpretations of the Defendants' respective legal obligations and knowledge of the confidential nature of the Plaintiff's business plan (specifically, the business idea and trade secrets contained therein) as relevant to Counts I–IV,[6] to the determination of novelty of a business idea under Florida's Uniform Trade Secrets Act (Counts II and III). *See Larach v. Standard Chartered Bank Int'l (Americas)*, 724 F. Supp. 2d 1228, 1239 (S.D. Fla. 2010) (declining to make factual determinations as to the disputed respective obligations of the parties at the motion to dismiss stage); *see also All Pro Sports Camp, Inc. v. Walt Disney Co.*, 727 So.2d 363, 367–68 (Fla. Dist. Ct. App. 1999) (reversing dismissal of misappropriation claim under Florida's Uniform Trade Secrets Act where district court determined the novelty of a business idea as a matter of law). The Motion attempts to undermine well-pled elements of the alleged causes of action by urging the Court to resolve these factual disputes in Defendants' favor. This is contrary to the standard of review at the motion to dismiss stage. *Am. Dental Ass'n*, 605 F.3d at 1289 (holding the Court should view the well-pled facts in the light most favorable to the Plaintiff). Accordingly, taking the well-pled facts in the light most

---

protect its secrecy" and ii.) "the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001).

[6] For instance, Defendants concede that Defendant O'Brien was a party to the confidentiality and non-compete agreement, but dispute that Defendant Astound, LLC is also a party to the agreement because of the misnomer "Astound Search" contained within the agreement. (DE #21, at 5). The Court finds, however, that the misnomer argument necessitates a factual determination as to whether Astound, LLC is a party to the confidentiality agreement, both in despite of the misnomer, as well as in light of O'Brien, who was Astound, LLC's sole managing member, as a signatory to the agreement.

favorable to the Plaintiff, the Court finds that the Amended Complaint states causes of action entitled to relief under Counts I–IV. Therefore, the Motion to Dismiss is denied insofar as it pertains to Counts I–IV.

### B. Count V

With respect to Count V, Defendants seek dismissal under Rule 12(b)(6), alleging that the Amended Complaint fails to state a claim for conversion as it does not allege that that the Defendants exercised wrongful dominion over Plaintiff's property. For Count V of the Amended Complaint, Plaintiff alleges that Defendants converted both the tangible business plan document, as well as "intangible interests in its virtual career fairs business venture." These "intangible interests" are identified as the Plaintiff's "business ideas" contained within the business plan that were to remain confidential per the confidentiality agreement.

Conversion is "an act of dominion wrongfully asserted over another's property inconsistent with his ownership of it." *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir.1990). In the Motion to Dismiss, Defendants argue that the Plaintiff has failed to plead how the Defendants have permanently deprived the Plaintiff of its intangible business ideas. (DE #21, at 18). In its Response, Plaintiff relies on *In re Estate of Corbin*, 391 So.2d 731 (Fla. Dist. Ct. App. 1980), for the proposition that a cause of action may lie for the conversion of an intangible business idea. (DE #24, at 22–23).

Here, the relationship between the parties is governed by a contract—one that prohibits both the unauthorized dissemination and the competing use of Plaintiff's intangible business ideas. This Court has previously held that concurrent causes of action for breach of contract and conversion cannot stand where the breach of contract claim

standing alone provides adequate remedies. *Telephone Operating Sys., Inc. v. Peoples Telephone Co., Inc.*, 831 F. Supp. 840, 848 (S.D. Fla. 1993). In so holding, this Court expressly rejected the broad reading of *In re Estate of Corbin* presently offered by the Plaintiff. *Id.* (declining to extend the rationale of *In re Estate of Corbin* where there exists an adequate remedy in contract law). This Court has already determined that the Amended Complaint sufficiently pleads causes of action for breach of contract (Count I), *supra* Part II.A., therefore there is no reason to believe that, if successful at trial, Plaintiff will not be able to recover adequate remedy under contract law. Accordingly, the Court finds it must dismiss with prejudice Count V of the Amended Complaint insofar as it attempts to state a cause of action for conversion of Plaintiff's intangible business ideas.

### C. Count VI

Count VI of the Amended Complaint alleges a false advertising claim under § 43(a) of the Lanham Act. In support of this claim, the Plaintiff alleges that prior to entering into the confidentiality agreement with the Defendants, the Plaintiff "was working with a web team to design the site, write the program for the virtual format and develop the platform, and was even in the process of patenting the program and platform." (DE #17, ¶ 8). Plaintiff further alleges that it is now unable to "meaningfully penetrat[e] or compet[e] with the Defendants in the university market" as a result of the Defendants' website falsely advertising that the Defendants "are the originators of the virtual career fair." (DE #17, ¶¶ 70–72). No where in the Amended Complaint does the Plaintiff set forth factual allegations to support a finding that the Plaintiff has a competing product currently in the market.

With respect to Count VI, Defendants argue that the Plaintiff lacks standing to bring a claim under § 43(a) of the Lanham Act. 18 U.S.C. § 1125(a)(1)(B). Defendants also argue that the Plaintiff has failed to plead the elements of the false advertising claim. Because the Court finds it is dispositive of the issue, the Court will only address the standing challenge to the false advertising claim.

The Lanham Act confers standing on "any person who believes that he or she is or is likely to be damaged" by misrepresentations in commercial advertising or promotion. 15 U.S.C. § 1125(a)(1)(B). In 2007, the Eleventh Circuit adopted a five-factor test ("the *Phoenix* Factors") to determine who has standing to bring a claim under § 43(a)(1)(B) of the Lanham Act:

> (1) The nature of the plaintiff's alleged injury: Is the injury of a type that Congress sought to redress in providing a private remedy for violations of the [ Lanham Act ]?
>
> (2) The directness or indirectness of the asserted injury.
>
> (3) The proximity or remoteness of the party to the alleged injurious conduct.
>
> (4) The speculativeness of the damages claim.
>
> (5) The risk of duplicative damages or complexity in apportioning damages.

*Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156, 1163–64 (11th Cir. 2007). Each of the *Phoenix* Factors hinges on the directness of the competition between the parties. *Id.* at 1173 (holding that the plaintiff, despite being a direct competitor with the defendant, did not have standing based on the type of injury alleged).

The crux of Defendants' standing challenge is that under the *Phoenix* Factors, the Plaintiff does not have standing because the Parties are not direct competitors. The

Defendants emphasize that although the Plaintiff alleges that it had planned to place its virtual interview format into the market, no where in the Amended Complaint does the Plaintiff allege that it presently has a product in the market. Defendants maintain that only active competitors have standing to bring false advertising claims under the Lanham Act and that, simply put, the Plaintiff never reached the status of an active competitor because the Plaintiff never introduced a competing product into the market.

In its response, the Plaintiff contends that the appropriate test for standing is the two-prong approach of the Ninth Circuit as set forth in *Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027 (9th Cir. 2005). (DE #24, at 24–25). Under the Ninth Circuit's framework, the Plaintiff argues that it is not necessary for a party to have a product in the market as long as the party's "ability to compete" has been impaired by the alleged false advertising. (DE #24, at 24–25). This argument is entirely without merit.

### a. The Eleventh Circuit Rejects the Ninth Circuit's "Categorical Approach" to Prudential Standing Under the Lanham Act

In *Phoenix*, the Eleventh Circuit considered for the first time what the appropriate prudential standing framework should be to bring a false advertising claim under the Lanham Act. *Phoenix*, 489 F.3d at 1163. The Court conducted a thorough analysis of the frameworks employed by each of its sister Circuit Courts of Appeal. When the Eleventh Circuit adopted the *Phoenix* Factors, it joined the approach taken by the Third and Fifth Circuit Courts of Appeal. *Id.* at 1163. In doing so, the Eleventh Circuit rejected the First and Second Circuits' "reasonable interest" test, which does not require direct competition. *Id.* at 1165–66. More significant to this present matter, the Eleventh Circuit also expressly rejected the "categorical approach" of the Seventh, Ninth, and Tenth

Circuits. *Id.* at 1164–65. It is abundantly clear that when the Eleventh Circuit adopted the *Phoenix* Factors, it expressly rejected the Ninth Circuit test cited by the Plaintiff in this matter.[7] *Phoenix*, 489 F.3d at 1164–67. Therefore, contrary to the Plaintiff's argument, this Court recognizes that direct competition is essential to a finding of standing to bring a false advertising claim under the Lanham Act in the Eleventh Circuit.

### b. The Significance of a "Product in the Market" in the Eleventh Circuit

Although the *Phoenix* Factors do not expressly require the plaintiff to have a product in the market, the Eleventh Circuit has found the existence of a product in the market to be indicative of whether direct competition exists between the parties. In *Natural Answers, Inc. v. SmithKline Beecham Corp.*, the Eleventh Circuit held that a plaintiff that had ceased selling and marketing its product seven months prior to the defendant's launch of its own competing product did not qualify as a direct competitor and was therefore unable to satisfy any of the five *Phoenix* Factors. 529 F.3d 1325 (11th Cir. 2008). Much like the Plaintiff's averments in the Amended Complaint, the plaintiff in *Natural Answers, Inc.* did "not have the ability or resources to market" its product. *Id.* at 1327. Nevertheless, the plaintiff took issue with the defendant's advertising that claimed the defendant was selling the "first and only" product like it on the market. *Id.* The Eleventh Circuit found that despite this inaccuracy in the defendant's advertising, the plaintiff was unable to procure standing absent a product in the market. *Id.* at 1332.

---

[7] The Court also notes that the Plaintiff has mischaracterized the prudential standing test employed by the Ninth Circuit as one that grants standing despite there being only the potential for competition between the parties. In actuality, the Ninth Circuit's approach is a categorical one that confers standing only on those who are in "actual" or "direct" competition with the defendant. *Phoenix*, 489 F.3d at 1164–65. Therefore, even if the Ninth Circuit's approach was applicable to this matter, the Plaintiff nevertheless would not have standing.

The Eleventh Circuit's analysis of direct competition in *Natural Answers, Inc.* is applicable to this case. As such, the Court finds that the Amended Complaint in the above-styled action does not plead the existence of a product in the market to support a finding of direct competition as crucial to satisfaction of any of the *Phoenix* Factors. *See id.* at 1331–32. Accordingly, this Court finds it must dismiss Count VI of the Amended Complaint with prejudice.

### D. Count VII

With respect to Count VII, the Plaintiff claims violations of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) premised on the Defendants' alleged misappropriation of Plaintiff's business idea (Counts II and III), misappropriation of trade secret in violation of Fla. Stat. § 688.003 (Count IV), and false advertising under the Lanham Act (Count VI). The Defendants move to dismiss on the basis that the Plaintiff has failed to state a cause of action for any of the allegations underlying the FDUTPA claim, that the Plaintiff has failed to plead how any of these underlying allegations deceive consumers, and that the Plaintiff does not make out a claim for actual damages against any of the three Defendants. (DE #21, at 27–31).

As an initial matter, this Court has already considered the adequacy of pleading of the three allegedly deceptive causes of action. The Court has found that the Plaintiff has sufficiently pled against all three Defendants causes of action for misappropriation of business idea and misappropriation of trade secrets. The Court has also found that the Plaintiff lacks standing to bring a claim for false advertising under the Lanham Act. Therefore, insofar as the FDUTPA claim relies on the false advertising claim as a deceptive act, it must be dismissed with prejudice. Now, the Court considers whether the

Plaintiff has sufficiently pled a FDUTPA claim based on the allegedly deceptive acts of misappropriation of business idea and misappropriation of trade secret. After careful consideration of the pleadings, the Court finds that the Plaintiff has sufficiently alleged FDUTPA causes of action based on the claims of misappropriation.

FDUTPA declares unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1) (2006). There are three elements for a FDUTPA claim for damages: 1.) a deceptive act or unfair practice; 2.) causation; and 3.) actual damages. *City First Mortgage Corp. v. Barton*, 988 So.2d 82, 96 (Fla. Dist. Ct. App. 2008). To plead a FDUTPA claim for injunctive relief, a party must allege 1.) a deceptive act or unfair practice; and 2.) that the party was aggrieved by the act practice. *See Kelly v. Palmer, Reifler, & Assoc., P.A.*, 681 F.Supp.2d 1356, 1366 (S.D. Fla. 2010).

It is well established in both the federal and state courts in Florida that FDUTPA is designed to protect consumers from deceptive acts that mislead consumers. *See, e.g., Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011); *Fonte v. AT&T Wireless Serv., Inc.*, 903 So.2d 1019, 1024 (Fla. Dist. Ct. App. 2005); *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. Dist. Ct. App. 2000); *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So.2d 602 (Fla. Dist. Ct. App. 1997). FDUTPA also protects against unfair practices, which "offend[] established public policy and [are] immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003)) (internal quotation marks omitted). FDUTPA defines "consumer" as "an individual; . . . business; . . . corporation; any commercial entity . . . ." Fla. Stat. § 501.203(7) (2006). Pursuant to this definition, the Plaintiff qualifies as a "consumer" under FDUTPA.

The Amended Complaint alleges that the president of Plaintiff Careerfairs.com discussed with Defendants Astound and O'Brien potential investment opportunities in the Plaintiff's business idea. (DE #17, ¶ 10). Pursuant to these investment discussions, the Plaintiff provided the Defendants with the business plan under the express understanding that the business plan and the ideas contained therein are confidential. (DE #17, ¶ 10). The Plaintiff and the Defendants executed a confidentiality agreement. (DE #17, ¶ 11). Some time later, the Defendants informed the Plaintiff that they were not interested in investing in the Plaintiff's business idea. (DE #17, ¶ 12). Approximately two years later, the Defendants launched a virtual career fair format that was almost identical to the Plaintiff's business idea and plan that was shared with the Defendants at the investment meeting. (DE #17, ¶ 18). As a result, the Plaintiff alleges that the "Defendants are now perceived as the innovators" of this virtual interview format, which has prevented the Plaintiff from entering the market with its own virtual interview format. (DE #17, ¶ 77).

Defendants argue that the Amended Complaint fails to plead how the misappropriation claims deceive either the Plaintiff or consumers. (DE #21, at 25). Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss is unresponsive to Defendants' argument with respect to the FDUTPA claim. Instead of arguing pursuant to relevant caselaw how the Amended Complaint pleads deceptive acts, the Plaintiff argues that the FDUTPA claim should survive the motion to dismiss because FDUTPA does not require a consumer transaction. (DE #24, at 29). In support of this argument, the Plaintiff cites *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773 (Fla.

2003), for the proposition that FDUTPA is not limited to consumer transactions. (DE #24, at 29–30). This is a mischaracterization of the case.[8]

In *Beacon*, the Florida Supreme Court considered a single issue—whether FDUTPA requires a pattern of deceptive behavior or whether a single deceptive act (in *Beacon*, the breach of the rental contract) could sustain a FDUTPA cause of action. *Id.* at 775. The Florida Supreme Court held that a single deceptive act is sufficient to bring a claim under FDUTPA. The Florida Supreme Court never addressed the issue of whether FDUTPA necessarily requires a consumer transaction or harm to consumers. *See Beacon Prop. Mgmt., Inc. v. PNR, Inc.*, 890 So.2d 274, 276 (Fla. Dist. Ct. App. 2004) (finding on remand from the Florida Supreme Court that the issue of whether "FDUTPA applies only to a *consumer transaction*" was still open).

Nevertheless, this Court finds that the Amended Complaint, considering the facts alleged in the light most favorable to the Plaintiff, sufficiently pleads the elements of a FDUTPA cause of action. The Plaintiff, a business entity, comes within the protection of FDUTPA. One of the stated purposes of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2) (2006). Furthermore, the Amended Complaint, albeit without using the word "deceive," sufficiently pleads how the deceptive acts of the Defendants caused harm to the Plaintiff. Finally, the Court finds the Plaintiff has set forth sufficient claims for actual damages and injunctive relief.

---

[8] In light of the Plaintiff's reliance on and mischaracterization of rejected Ninth Circuit caselaw, in conjunction with this mischaracterization of a Florida Supreme Court case, the Court cautions Plaintiff's counsel to be mindful of a lawyer's duty to be candid with the tribunal.

Therefore, the Court finds that it must deny the Defendants' Motion to Dismiss Count VII insofar as it relies on the underlying deceptive allegations of misappropriation of business idea and misappropriation of trade secret.

Accordingly, having considered the Parties' filings and being otherwise advised, it is hereby **ORDERED, ADJUDGED, and DECREED** that Defendants' Motion to Dismiss Amended Complaint (**DE #21**) be, and the same is hereby, **DENIED in part** and **GRANTED in part**:

1. Defendants' Motion to Dismiss Amended Complaint (DE #21) for Counts I, II, III, and IV be, and the same is hereby, **DENIED**.

2. Defendants' Motion to Dismiss Amended Complaint (DE #21) for Counts V, and VI be, and the same is hereby, **GRANTED**. Counts V and VI are **DISMISSED with prejudice** against all Defendants.

3. Defendants' Motion to Dismiss Amended Complaint (DE #21) for Count VII insofar as it relies on the underlying deceptive allegations of Count VI for false advertising be, and the same is hereby, **GRANTED**. Count VII insofar as it relies on the underlying deceptive allegations of Count VI for false advertising is **DISMISSED with prejudice**.

4. Defendants' Motion to Dismiss Amended Complaint (DE #21) for Count VII insofar as it relies on the underlying deceptive allegations of Counts II, III, and IV for misappropriation of business idea and trade secret be, and the same is hereby, **DENIED**.

5. Defendants shall **ANSWER** the Counts I, II, III, IV, and VII of Plaintiff's Amended Complaint within **twenty days** of the date of this Order.

**DONE** and **ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida on this 28th day of September, 2011.

JAMES LAWRENCE KING
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

cc:

*Counsel for Plaintiff*
**Ian J. Kukoff**
Blaxberg Grayson & Singer
25 SE 2nd Avenue
730 Ingraham Building
Miami, FL 33131
305-381-7979
Fax: 371-6816
Email: ian.kukoff@blaxgray.com

*Counsel for Defendants*
**Daniel Lawrence Abbott**
Weiss Serota Helfman
200 E. Broward Blvd.
Suite 1900
Ft. Lauderdale, FL 33301
954-763-4242
Fax: 954-764-7770
Email: dabbott@wsh-law.com

**Roger Steven Kobert**
Rafferty Kobert Tenenholtz Bounds & Hess, P.A.
1401 Brickell Avenue
Suite 825
Miami, FL 33131
305-373-0330
Fax: 373-2735
Email: rkobert@raffertylawyers.com

**Scott Michael Singer**
Weiss Serota Helfman Pastoriza Cole & Boniske, P.L.
200 E Broward Blvd.

Suite 1900
Fort Lauderdale, FL 33301
954-763-4242
Fax: 954-764-7770
Email: ssinger@wsh-law.com

**Anna C. Aguilar**
Berger Legal LLC
521 Fifth Avenue
Suite 330
New York, NY 10175
646-435-4855
Email: aaguilar@bergerlegal.com

**Lisa D. Bentley**
Berger Legal LLC
521 Fifth Avenue
Suite 330
New York, NY 10175
646-648-0469
Email: lbentley@bergerlegal.com